89 F.3d 846
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
PHOENIX LEASING INCORPORATED, Plaintiff-Appellee,
v.
SURE BROADCASTING, INC., Defendant-Appellant.
 Nos. 94-15594, 95-16204.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted March 12, 1996.
Decided May 1, 1996.
 
 Before: CHOY, BEEZER and HAWKINS, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Phoenix Leasing Incorporated sued Sure Broadcasting, Inc. to collect a secured debt. Pursuant to the Security Agreement between the parties, the district court ordered the appointment of a receiver. Sure appeals issues related to the receivership as well as summary judgment in favor of Phoenix.
 
 
 3
 We have jurisdiction pursuant to 28 U.S.C. §§ 1291 and 1292, and we affirm.
 
 
 4
 * Sure operated two radio stations, KZSR of Reno, Nevada, and KHXS of Abilene, Texas. Phoenix and Sure entered into a loan agreement under which Phoenix agreed to advance Sure up to $1,250,000. In return, Sure granted Phoenix a security interest in all of Sure's property and any proceeds from the property. The parties agreed that in the event of default, Phoenix could petition for a court appointed receiver.
 
 
 5
 Sure defaulted on the loan. Phoenix filed an action in the district court to recover the cash it had advanced Sure, plus, according to the terms of the loan agreement, interest of thirty percent per year and attorneys' fees. The court appointed a receiver over all of Sure's assets and directed the receiver to apply to the FCC for assignment of the licenses. The FCC approved the transfer of the licenses to the receiver.
 
 
 6
 The court granted summary judgment to Phoenix and ordered Sure to pay $669,228.17, of which $171,928.33 was principal and $497,299.84 was interest. The court also awarded Phoenix attorneys' fees. The final judgment in the case directed the receiver to turn over all assets, including the FCC licenses, to Phoenix subsequent to FCC approval. Both the district court and this court denied Sure's request to stay the order of sale pending appeal. KZSR was sold to a creditor, and the FCC approved the transfer of the license with the station's assets. KHXS has not yet been sold.
 
 II
 
 7
 We review the appointment of a receiver for an abuse of discretion. See SEC v. Hardy, 803 F.2d 1034, 1037 (9th Cir.1986) (district court's supervision of an equitable receivership is reviewed for an abuse of discretion).
 
 
 8
 The FCC historically has prohibited creditors from obtaining security interests in FCC licenses. See, e.g., In re Tak Communications, Inc., 138 B.R. 568, 577 (W.D.Wis.1992), aff'd 985 F.2d 916 (7th Cir.1993). Sure argues that the district court violated FCC policy by ordering the receiver to take control of and sell the licenses subsequent to FCC approval. We disagree.
 
 
 9
 Creditors cannot foreclose on an FCC license, but they may have an interest in the proceeds from the sale of the license. In re Cheskey, 9 F.C.C.R. 986 (1994). The FCC has "routinely approved involuntary assignments of license in cases where licensees have filed for bankruptcy or where courts have appointed receivers." In re Parsons, 10 F.C.C.R. 2718, 2721 at p 17 (1995). Although Parsons was a bankruptcy case, the FCC has approved involuntary transfers based purely on contractual disputes. See In re Arecibo Radio Corp., 101 F.C.C.2d 545 (1985) (holding that it was not a violation of FCC policy for a court to order licensees to petition the FCC for a transfer of licenses or, if they would not, have the Marshal apply for the transfer in the licensees' names).
 
 
 10
 In this case, the FCC approved involuntary transfer of the stations to the receiver. The court's order did not violate FCC policy.
 
 B
 
 11
 Sure also argues that it was reversible error for the district court to order the receiver to sell Sure's assets and licenses while the interlocutory appeal was pending before this court. Specifically, Sure contends that "[t]he pending appeal divested the District Court of authority to use the receivership for anything other than maintenance of the status quo. Otherwise, the sale would render the appeal moot."
 
 
 12
 We agree that sale of KZSR renders issues relating to the KZSR assets moot. See In re Baker & Drake, Inc., 35 F.3d 1348, 1351 (9th Cir.1994) ("The transfer to a third party precludes meaningful relief.") KHXS has not yet been sold, so there is no mootness concern with that station's assets. However, because KHXS was not sold pending appeal, we do not have to reach the theoretical question of whether such a sale would have been beyond the court's power. The proper place to consider the district court's power to sell assets pending appeal is on a motion to stay the order. The district court and this court both denied a stay. We will not now reexamine the purely academic question of whether the court could have ordered the sale pending appeal.
 
 
 13
 We also find no merit in Sure's argument that the district court order "authorizes Phoenix to sell or keep a 'bare' license without the related hard assets." The district court's order required the assets and licenses to be sold together.
 
 III
 
 14
 Sure argues that there was a genuine issue of material fact as to whether the loan was usurious, precluding summary judgment on that issue. We review the grant of summary judgment de novo. Jesinger v. Nevada Fed. Credit Union, 24 F.3d 1127, 1130 (9th Cir.1994).
 
 
 15
 California Constitution Article XV, Section 1, exempts "loan[s] made by ... a personal property broker" from the state's usury laws. Phoenix is a licensed personal property broker, and is the named lender on the loan. Phoenix also is the holder of the note.[1] Despite these facts, Sure argues that the deposition testimony of Phoenix Vice President Gary Martinez created a genuine issue of fact as to whether Phoenix was the "true lender" on the loan. Martinez testified that Phoenix typically would close a loan in its own name and then "simultaneously" assign the loan to the limited partnership who had provided the funds for the loan. He testified that he thought the loan to Sure followed this pattern.
 
 
 16
 The California Court of Appeal has previously rejected Sure's argument that an exempt lender's assignment of the loan to another renders the loan usurious. Strike v. Trans-West Discount Corp., 155 Cal.Rptr. 132, 139 (Cal.Ct.App.), appeal dismissed, 444 U.S. 948 (1979). Although the lender in Strike used its own funds for the loan, Strike 's rationale applies to this case as well.
 
 
 17
 Sure cites two bankruptcy cases for the proposition that "the style of the transaction is a question of fact" precluding summary judgment. The cases it cites, however, involve transactions in which borrowers and lenders used sale-leaseback arrangements to try to camouflage their transactions in order to avoid federal tax or state usury laws. See In re Nite Light Inns, 13 B.R. 900, 908 (Bankr.S.D.Cal.1981) and Fox v. Peck Iron & Metal, Inc., 25 B.R. 674, 678-90 (Bankr.S.D.Cal.1982). Such transactions are not at issue here.
 
 IV
 
 18
 We deny Sure's motion to strike Phoenix's Supplemental Excerpts of Record in the interlocutory appeal. Sure's argument, that the district court could not consider previously filed materials and was limited to materials that were presented at the December 29, 1993 hearing, is without merit. See 7 Moore's Federal Practice, § 66.04, at 66-12 (2d ed. 1995).
 
 V
 
 19
 Phoenix requests attorneys' fees. The loan agreement provides for the award of "costs and expenses, if any, in connection with the enforcement of any of the loan documents." We remand the case to the district court to award Phoenix reasonable attorneys' fees incurred on appeal. See Cal.Code Civ.Proc. § 685.040 (1996 Supp.).
 
 VI
 
 20
 We AFFIRM the district court's judgment and REMAND for an award of reasonable attorneys' fees on appeal to Phoenix.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or used by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Sure argues, unconvincingly, that Phoenix is not the holder of the note and thus has no standing to sue for the debt. The note is written as payable to Phoenix, and Phoenix is in possession of it. Under California law, Phoenix is the holder. See California Commercial Code § 1201(20) (defining a holder as one who is in possession of an instrument that is issued to his order)